IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| SHIRLEY MAUD BURNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 116-004 |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

_____

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Shirley Burnett, proceeding *pro se*, appeals the decision of the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.   BACKGROUND**

Plaintiff is a fifty-five year old female with a high school education and work experience as a parts inspector and quality auditor. Tr. ("R."), pp. 61-62, 204, 206, 444. Plaintiff applied for

---

[1] The Court takes judicial notice that on January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the Clerk of Court to substitute Nancy A. Berryhill as Defendant in this case.

DIB on August 29, 2011, alleging a disability onset date of March 29, 2011.  R. 144-50.  The Social Security Administration denied Plaintiff's application initially and on reconsideration.  R. 96-98, 103-06.  The ALJ held a hearing on July 17, 2014, and heard testimony from Plaintiff, who was represented by counsel, as well as from Victor Alberigi, a Vocational Expert ("VE").  R. 16-71.  On September 25, 2014, the ALJ issued an unfavorable decision.  R. 75-88.

Applying the five-step sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 29, 2011, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease; degenerative joint disease of the right shoulder; and obesity (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work[2] as defined in 20 CFR 404.1567(b).  In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently.  She can stand or walk for approximately 6 hours in an 8 hour workday and sit for approximately 6 hours in an 8 hour workday with normal breaks.  The claimant is further limited to

---

[2]Light work is defined as:

"lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

20 CFR § 404.1567(b).

      no more than frequent balancing, no more than occasional stooping, kneeling, crouching, or climbing of ramps or stairs, and no crawling or climbing of ladders, ropes, or scaffolds. The claimant should also avoid concentrated exposure to hazardous machinery and unprotected heights.

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). The claimant has not been under a disability, as defined in the Social Security Act, from March 29, 2011, through the date of this decision (20 CFR 404.1520(g)).

R. 75-88.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.

Contrary to the Court's instructions (see doc. no. 15), Plaintiff has neither cited authority in support of her position, nor specifically stated the issues presented for review. However, giving liberal construction to Plaintiff's *pro se* brief[3], the Court concludes that Plaintiff is arguing the ALJ's decision is not supported by substantial evidence. (See doc. no. 16, ("Pl.'s Br.").) The Commissioner maintains the ALJ's decision is supported by substantial evidence. (See doc. no. 18, pp. 1-13 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439

---

[3] The Court directed Plaintiff to "serve and file a brief setting forth all errors which Plaintiff contends entitle her to relief." (Doc. no. 15, p. 1.) Plaintiff then filed a two-page letter reviewing her work experience and health problems, and requesting Social Security benefits. (Doc. no. 16.) The Court construes Plaintiff's letter as her brief.

(11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether

correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

As a preliminary matter, to the extent Plaintiff requests the Court revisit the issue of disability, the Court will not do so. As stated above, a determination as to whether there is substantial evidence in the record to support fact findings in a Social Security disability case does not involve reweighing evidence, trying issues *de novo*, or substituting the Court's judgement for that of the Commissioner. Without any specific enumerations of error, the Court is limited to scrutinizing the record in its entirety to determine whether substantial evidence supports the Commissioner's findings and whether the law has been correctly applied. 42 U.S.C. § 405(g).

Plaintiff contends substantial evidence does not support the ALJ's decision that she is not disabled because she suffers from a brain injury, chronic back pain, urinary incontinence, vison deficiencies, right shoulder rotary cuff pain, diabetes, and depression, and can only ambulate with an assistive device. (Pl.'s Br. 1-2.) The Commissioner contends the ALJ properly evaluated the evidence in the record and that the ALJ's decision is supported by substantial evidence. (Comm'r's Br. 1-13.) As explained *infra*, the ALJ's decision Plaintiff is not disabled is supported by substantial evidence.

### A. Substantial Evidence Supports the ALJ's Step Two Findings Regarding Plaintiff's Severe and Non-Severe Impairments.

A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work

activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 416.920(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

Here, at step two, the ALJ found Plaintiff's degenerative disc disease, degenerative joint disease of the right shoulder, and obesity to be severe impairments because they caused more than a minimal limitation in Plaintiff's ability to perform basic work activities. R. 78. The ALJ determined Plaintiff's "brain injury," urinary incontinence, vision deficiencies, diabetes, and depression were non-severe impairments. R. 78-86.

As for Plaintiff's brain injury, the ALJ noted Plaintiff was involved in a motor vehicle accident in March 2011 in which she sustained a head injury. R. 80. A computed tomography scan conducted on March 29, 2011, revealed a large left parietal hematoma with no evidence of osscous fracture or intra/extra-axial hemorrhage. R. 319. A later scan conducted on October 3, 2011, revealed Plaintiff's hematoma had completely resolved. R. 372. Because Petitioner's hematoma did not last at least twelve months, it was not a severe impairment, and the ALJ did not err in classifying it as non-severe. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Furthermore,

7

Plaintiff has not shown her hematoma affects her ability to perform basic work activities. In June 2012, non-examining psychologist Uwe Jacobs reviewed Plaintiff's file and opined Plaintiff's hematoma should not have any significant residual effects on her functioning. R. 435. The ALJ assigned Dr. Jacobs's opinion significant weight, and substantial evidence supports the ALJ's determination Plaintiff's hematoma was not a significant impairment.

The ALJ relied on substantial evidence in concluding Plaintiff's diabetes, vision loss, and urinary incontinence were non-severe impairments. The ALJ cited evidence from treating physician Dr. Kelli M. Carter that Plaintiff's diabetes was non-insulin dependent, the prescribed treatment was limited to blood sugar testing, and a diabetic exam revealed Plaintiff's feet were normal. R. 81, 437, 469, 481. As for Plaintiff's vision loss, examining neurologist Dr. Terry L. Wimpey tested Plaintiff's vision on October 2, 2012, determined Plaintiff had a "normal visual evoked response," and opined testing showed no "abnormality in the visual pathways," and only minimal trouble due to vision loss. R. 441. Turning to Plaintiff's urinary incontinence, treatment notes from Nurse Practitioner Jennifer Sapp revealed Plaintiff's urinary incontinence was minor, spontaneous, and without hematuria. R. 483. As the medical record suggests, these impairments were minor and do not suggest any limitations on Plaintiff's ability to perform basic work activities. Accordingly, substantial evidence supports the ALJ's findings that Plaintiff's vision problems, urinary incontinence, and diabetes were non-severe impairments.

In evaluating Plaintiff's depression, the ALJ properly applied the required "psychiatric review technique" in determining it was a non-severe impairment. R. 78-79. Title 20, Code of Federal Regulations, Section 416.920a sets forth a "special technique" to be followed in the analysis of mental impairments. The ALJ must first evaluate the degree of functional limitation resulting from the impairment. If the ALJ finds the impairment severe, the ALJ

then must determine whether the impairment meets or is equivalent in severity to a listed mental disorder. If the impairment is not a listed disorder, then the ALJ must evaluate the claimant's residual functional capacity. 20 C.F.R. § 416.920a.

In evaluating the severity or degree of functional limitation resulting from a mental impairment, the ALJ considers four functional categories and rates the degree of functional limitation in each category. Those categories include activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[4] Id. § 416.920a(c)(3). In rating the first three functional categories, an ALJ classifies the degree of limitation as "none," "mild," "moderate," "marked," or "extreme." In rating the decompensation category, the ALJ classifies the limitation as "none," "one or two," "three," and "four or more." Id. § 416.920a(c)(4). If the ALJ finds the degree of limitation in the first three categories to be "none" or "mild" and the degree of limitation in the fourth category to be "none," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on [the] ability to do basic work activities." Id. § 416.920a(d)(1).

Here, the ALJ applied the technique and determined (1) Plaintiff's functional limitations were "no more than mild" in the categories of activities of daily living, social functioning, and concentration, persistence, and pace and (2) there was no evidence of decompensation episodes. R. 78-79. The ALJ reached these conclusions in part because the record did not reflect Plaintiff had sought mental health treatment for her depression. Id.

---

[4] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

The ALJ also examined opinion evidence from consultative examiner Dr. Adrian Janit, a psychologist, who evaluated Plaintiff on November 12, 2012, and opined Plaintiff presented "probably marked" limitations in her abilities to: (1) understand and carry out instructions; (2) maintain attention and concentration; (3) respond appropriately to coworkers, supervisors, and the general public; (4) adhere to a work schedule and complete tasks in a normative fashion; and (5) withstand the stresses and pressures associated with most work settings. R. 448. However, the ALJ found Dr. Janit's findings entitled to little weight because Dr. Janit noted possible malingering, and suggested Plaintiff's cognitive functioning be reevaluated because she was experiencing and episode of delirium caused by her diabetes. R. 78-79, 446-48.

The ALJ relied on substantial evidence from treating physician Dr. Jacobs and non-examining physician Dr. George Uwe who both found Dr. Janit's evaluation inconsistent with the evidence in the medical record, warranting little weight. R. 78-79, 435, 462. The ALJ also relied on two years of treatment notes from Dr. Carter showing Plaintiff was "stable overall, while being in no acute stress, with a repeatedly normal mental status." R. 82. Thus, the ALJ's finding that Plaintiff's depression was non-severe is supported by substantial evidence. See Reynolds v. Comm'r of Soc. Sec., 457 F. App'x 850, 852 (11th Cir. 2012) (holding ALJ's finding of non-severe impairments was supported by substantial evidence where ALJ used psychiatric review technique and found no medical evidence supported Plaintiff's claims of functional limitations).

### B. ALJ's RFC Finding

#### 1. Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R § 416.967. Here, the ALJ determined Plaintiff could perform light work and could lift or carry up to twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an

11

eight-hour workday, sit for six hours in an eight-hour workday, and was limited to no more than frequent balancing, occasional stooping, kneeling, crouching, or climbing of ramps or stairs, and no crawling or climbing of ladders, ropes, or scaffolds.  R. 80.

### 2. Substantial Evidence Supports the ALJ's RFC Finding.

The ALJ properly weighed all of the medical evidence in determining Plaintiff's RFC.  R. 86.  As for Plaintiff's severe impairments of degenerative disc disease, degenerative joint disease of the right shoulder, and obesity, the ALJ cited substantial evidence from the medical record indicating Plaintiff could perform within the RFC finding despite her severe impairments.

The ALJ cited objective medical findings and opinion evidence from Dr. Harriett Steinert, a general practice physician, who evaluated Plaintiff on April 30, 2012.  R. 81, 405-06.  Dr. Steinert found Plaintiff presented a "full range of motion of the cervical spine . . . [with] full range of motion of all joints in all four extremities."  R. 406.  Although Dr. Steinert noted Plaintiff was able to walk across the room, Dr. Steinert noted Plaintiff had a limping gait and "should use a cane all the time."  Id.  Dr. Steinert diagnosed Plaintiff with chronic lumbar spine pain, headaches, decreased vision, and decreased memory.  Id.  Dr. Steinert's opinion is supported by the bulk of Plaintiff's medical records revealing normal findings and strength in Plaintiff's extremities, with only mild limitations in Plaintiff's right shoulder range of motion.  See R. 288, 294, 299, 325, 481.  In evaluating Plaintiff's spine, the ALJ also pointed to an October 3, 2011 MRI which revealed largely normal findings with mild degenerative disc disease and a mild disc bulge.  R. 374.

Non-examining consultative physician Dr. Howard Colier reviewed Plaintiff's file on April 30, 2012.  R. 425-35.  Dr. Colier opined Plaintiff could lift twenty pounds occasionally, ten

pounds frequently, stand for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, could frequently climb stairs, kneel, crouch, or crawl, and could occasionally balance, stoop, and kneel.  R. 425-26.  Although Dr. Colier determined Plaintiff was required to use a hand-held assistive device, this conclusion was reached because Plaintiff "uses a cane at all times," but Dr. Colier noted a cane was not prescribed.  R. 426.  The ALJ gave Dr. Colier's opinion some weight.  R. 86.

The ALJ addressed Plaintiff's use of an ambulatory assistive device, finding the medical record did not indicate prescription of an ambulatory assistive device.  R. 84.  Instead, the medical evidence reveals Plaintiff does not require an ambulatory assistive device, and only used an assistive device because she subjectively believed she needed one.  R. 406, 290.  As the ALJ referenced, Plaintiff's October 3, 2011 spinal MRI revealed largely normal findings with mild degenerative disc disease and a mild disc bulge.  R. 374.  Consistent with these findings, X-rays of Plaintiff's lumbar spine taken on April 23, 2014, revealed well maintained disc space heights, no fracture or spondylolisthesis, with no acute findings seen.  R. 580.  A June 9, 2014, musculoskeletal examination revealed Plaintiff had normal muscle tone, coordination, and gait, and could ambulate well on the tips of her toes and heels of her feet.  R. 577.  Because Plaintiff did not show her use of a cane or walker was medically required or prescribed "through medical documentation . . . establishing the need . . . and describing the circumstances for which it is needed," the ALJ properly omitted the need for an assistive device in the RFC finding.  SSR 96-9p, 1996 WL 374184.

The ALJ's evaluation of Plaintiff's subjective allegations is supported by substantial evidence.  The Eleventh Circuit has established a three-part standard for evaluating subjective complaints.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  Under the Eleventh

Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[5] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). The ALJ's detailed analysis of Plaintiff's credibility far surpasses this minimum standard.

At the hearing, Plaintiff testified she was disabled based on the myriad of physical and mental impairments discussed *supra*. Plaintiff testified her lower back caused her the most pain, and the pain radiated down her left leg. R. 36-38. Plaintiff further testified she required a walker to ambulate, suffered from blurry vision, struggled with right shoulder

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

pain, had debilitating headaches, and struggled with depression. R. 26-47. In finding Plaintiff's subjective allegations not entirely credible, the ALJ cited the objective medical record and noted Plaintiff's complaints were inconsistent with her conservative treatment. R. 82-86. These reasons constitute substantial, explicit, and adequate evidence to discredit Plaintiff's subjective allegations of her disabling impairments.

As discussed *supra*, the ALJ cited objective medical evidence revealing: (1) Plaintiff had full strength and range of motion in her extremities and was not limited by her lumbar spine; (2) she could ambulate without an assistive device; (3) her right shoulder range of motion was only mildly limited; (4) her hematoma resolved in less than twelve months and she had intact cognition; (5) her depression did not qualify as a severe impairment; (6) her incontinence and diabetes did not affect her ability to work, and (7) her vision testing revealed no signs of abnormalities. R. 78-86.

The ALJ also found Plaintiff's treatment for her conditions was minimal, conservative, and routine, which suggested Plaintiff's pain was tolerable. R. 84. Indeed, the ALJ noted no physicians recommended surgical intervention for any of Plaintiff's impairments. Id. The Eleventh Circuit has stated "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." Sheldon v. Astrue, 268 Fed. App'x 871, 872 (11th Cir. 2008). Additionally, the ALJ found Plaintiff's impairments were easily controlled with medicinal compliance. R. 84. Consequently, substantial evidence supports the ALJ's determination that Plaintiff's allegations of pain were not credible. See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [t]he type, dosage,

effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms.").

In sum, substantial evidence supports the ALJ's determination of Plaintiff's RFC for a reduced range of light work with postural limitations.

### C. The ALJ's Determination Plaintiff Can Perform Other Work in the National Economy is Supported By Substantial Evidence.

At the hearing, the ALJ asked the VE to identify the occupations that constituted Plaintiff's past relevant work. R. 61. The VE identified Plaintiff's past work as inspector/packager, and parts inspector. R. 61-62. The ALJ asked the VE whether a hypothetical individual with the same age, education, work experience and RFC as Plaintiff could perform Plaintiff's past relevant work. R. 64. The VE determined such individual could not perform Plaintiff's past work, but identified other work that the individual could perform. Id. These jobs included housekeeper, laundry sorter, and small product assembler. R. 65. By relying on a complete hypothetical presented to the VE, the ALJ relied on substantial evidence in determining Plaintiff could perform other work in the national economy. Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999) (holding VE testimony may be "crucial to an ALJ's [step 5] determination . . . [and] that an ALJ may rely solely on the VE's testimony.").

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a

16

final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 31st day of March, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA